No. 23-60284

# In the
# United States Court of Appeals
# for the Fifth Circuit

**MORRIS & DICKSON CO., LLC,**

*Petitioner,*

v.

**UNITED STATES DRUG ENFORCEMENT ADMINISTRATION,**

*Respondent.*

On Petition for Review of an Order of the Drug
Enforcement Administration

## REPLY IN SUPPORT OF OPPOSED MOTION FOR
## STAY PENDING PETITION FOR REVIEW

Jim Walden
John Curran
Veronica M. Wayner
James Meehan
WALDEN MACHT & HARAN LLP
250 Vesey Street, 27th Floor
New York, NY 10281
(212) 335-2030
jwalden@wmhlaw.com

Jeffrey R. Johnson
*Counsel of Record*
Harry S. Graver
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
(202) 879-3939
jeffreyjohnson@jonesday.com

*Counsel for Petitioner Morris & Dickson Co., LLC*

## CERTIFICATE OF INTERESTED PERSONS

### No. 23-60284, *Morris & Dickson Co., LLC v. U.S. Drug Enforcement Administration*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Local Rule 28.2.1 have an interest in the outcome of this case.  These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1.    Petitioner Morris & Dickson Co., LLC is a Louisiana limited liability company.  Its parent company is Morris & Dickson Holding Co. L.L.C., a Louisiana limited liability company.

2.    The owners of Morris & Dickson Holding Co. L.L.C. are individual members of the Dickson family and their trusts.  *See* 5th Cir. R. 28.2.1 ("If a large group of persons or firms can be specified by a generic description, individual listing is not necessary.").

3.    Respondent United States Drug Enforcement Administration is a federal agency.

**Petitioner**
Morris & Dickson Co., LLC

**Counsel**
Jeffrey R. Johnson
Harry S. Graver
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
(202) 879-3939
jeffreyjohnson@jonesday.com

Jim Walden
John Curran
Veronica M. Wayner
James Meehan
WALDEN MACHT & HARAN LLP
250 Vesey Street, 27th Floor
New York, NY 10281
(212) 335-2030
jwalden@wmhlaw.com

**Respondent**
United States Drug
Enforcement Administration

**Counsel**
Hallie Hoffman
Paul Dean
David M. Locher
Dayle Elieson
Timothy J. Shea
Office of Chief Counsel
U.S. DRUG ENFORCEMENT
ADMINISTRATION
8701 Morrissette Drive
Springfield, VA 22152
(571) 776-2840

Joshua M. Salzman
Anna M. Stapleton
Civil Division, Appellate Staff
U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530
(202) 514-3511
joshua.m.salzman@usdoj.gov

Dated: June 16, 2023

/s/ Jeffrey R. Johnson

*Counsel of Record for Petitioner*
*Morris & Dickson Co., LLC*

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ............................................................. i

TABLE OF AUTHORITIES ........................................................................................ v

INTRODUCTION......................................................................................................... 1

ARGUMENT ................................................................................................................ 1

I.    MORRIS & DICKSON IS LIKELY TO SUCCEED ON THE
      MERITS. ............................................................................................................ 1

      A.    The Removal Challenge Is Likely To Succeed. .......................................... 1

      B.    The Appointments Challenge Is Likely To Succeed................................... 5

      C.    The Arbitrary & Capricious Challenge Is Likely To Succeed. .................. 7

II.   THE EQUITABLE FACTORS FAVOR A STAY. ............................................ 9

      A.    Morris & Dickson Faces Irreparable Harm Absent a Stay. ...................... 9

      B.    The Public Interest Favors a Stay............................................................... 10

CONCLUSION ........................................................................................................... 11

CERTIFICATE OF COMPLIANCE .......................................................................... 12

CERTIFICATE OF ELECTRONIC SUBMISSION.................................................. 13

CERTIFICATE OF SERVICE ................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Axon Enterprise, Inc. v. FTC,*
  143 S. Ct. 890 (2023) ................................................................................... 7

*Carr v. Saul,*
  141 S. Ct. 1352 (2021) ............................................................................ 5, 6

*Collins v. Yellen,*
  141 S. Ct. 1761 (2021) ............................................................................ 2, 4

*Dep't of Comm. v. New York,*
  139 S. Ct. 2551 (2019) ................................................................................. 9

*Free Enterprise Fund v. PCAOB,*
  561 U.S. 477 (2010) ................................................................................ 2, 3

*Freytag v. Commissioner,*
  501 U.S. 868 (1991) ...................................................................................... 6

*Jarkesy v. SEC,*
  34 F.4th 446 (5th Cir. 2022) ................................................................... 1, 2

*Lucia v. SEC,*
  138 S. Ct. 2044 (2018) ......................................................................... 3, 5, 6

*Morall v. DEA,*
  412 F.3d 165 (D.C. Cir. 2005) .................................................................... 8

*Morrison v. Olson,*
  487 U.S. 654 (1988) ...................................................................................... 3

*Ramspeck v. Fed. Trial Examiners Conf.,*
  345 U.S. 128 (1953) ...................................................................................... 4

*SEC v. Chenery Corp.,*
  332 U.S. 194 (1947) ...................................................................................... 5

*Seila Law LLC v. CFPB,*
  140 S. Ct. 2183 (2020) ................................................................................. 3

*Stern v. Marshall*,
   564 U.S. 462 (2011) ............................................................... 4

*United States v. Arthrex*,
   141 S. Ct. 1970 (2021) ........................................................... 2

*United States v. Perkins*,
   116 U.S. 483 (1886) ............................................................... 3

**STATUTES**

5 U.S.C. § 7521 ............................................................................ 3

**OTHER AUTHORITIES**

88 Fed. Reg. 34523 (May 30, 2023) .................................. 5, 7, 8

Sec'y of Educ. Review of ALJ Decisions,
   15 Op. O.L.C. 8 (1991) ......................................................... 3

## INTRODUCTION

This is the textbook case for a stay. Absent one, Morris & Dickson will be forced to shutter after 180 years in business, and a plainly unlawful administrative order will do its damage by evading judicial review. By contrast, the Government will suffer no harm from a stay, losing only the ability to implement now a sanction it waited four years to impose and had no authority to issue. This Court should grant a stay, preserve the status quo, and allow Morris & Dickson the chance to vindicate its rights.

## ARGUMENT

## I.     MORRIS & DICKSON IS LIKELY TO SUCCEED ON THE MERITS.

### A.     The Removal Challenge Is Likely To Succeed.

**1.**     The merits of Morris & Dickson's removal challenge are straightforward. In *Jarkesy v. SEC*, this Court held it unconstitutional to have multiple layers of for-cause protection insulate ALJs from removal. 34 F.4th 446, 465 (5th Cir. 2022). And here, DEA ALJs are insulated by multiple layers of such protection—one for the ALJs themselves, and another for the members of the MSPB who decide whether ALJs can be removed.

The Government's principal response is *Jarkesy* did not really mean what it said. *Jarkesy* only discussed the MSPB in "passing," the Government argues, and based its decision on the fact SEC *Commissioners* purportedly have for-cause protection. Opp.9.

That attempt at cabining *Jarkesy* cannot survive a skim of the opinion. There, this Court said expressly the MSPB was a "layer[] of for-cause protection stand[ing] in

the President's way." 34 F.4th at 465. And that statement was an essential part of its reasoning. The Court specifically *rejected* the Government's argument that the only relevant protections were those of the ALJs and SEC Commissioners, reasoning "the MSPB is part of the mix as well," and that this distinct layer of insulation created an "Article II problem"—*independent* from any protections ALJs enjoyed on their own. *Id.*; *see also* Pet. for Cert., *SEC v. Jarkesy*, No. 22-859 (U.S.), at 19-20 (urging Supreme Court to grant review because this Court's Article II analysis about MSPB was "incorrect").[1]

**2.**     The Government's attempt to minimize the MSPB is unconvincing on its own. It insists the MSPB is not a "layer" of protection, because the Board does not decide "whether an ALJ should be removed," only "whether the employing agency has demonstrated the good cause necessary to support the removal." Opp.9. In this sense, the MSPB is no different from a federal court. *Id.*

That is deeply mistaken. Unlike an Article III court, the MSPB sits entirely within the Executive. When the MSPB thwarts removal, the blame for the ALJ's subsequent misdeeds will rest not with the *Judiciary* for blocking it, but with the *Executive* (*i.e., the President*) for not removing him in the first place. The buck is supposed to stop with the President, *Free Enterprise Fund v. PCAOB*, 561 U.S. 477, 513-14 (2010), and when it stops below him, that blurs the lines of accountability for the performance, personnel, and decisions of the Executive. *United States v. Arthrex*, 141 S. Ct. 1970, 1982 (2021).

---

[1] *Jarkesy* also cannot rest on the Commissioners' purported for-cause protections, because they in fact lack them. *See Collins v. Yellen*, 141 S. Ct. 1761, 1788 (2021).

With little else, the Government urges this Court to ignore the MSPB in light of the "remarkable implications" of doing otherwise. Opp.10. But this Court need not decide how the MSPB affects other officers—officers who may be different from ALJs in powers or protections. It need only decide this case. *Free Enterprise*, 561 U.S. at 507.

**3.** Even aside from the MSPB, DEA ALJs are unconstitutionally tenured. Contrary to the Government's assumption (Opp.7), ALJs must be removable at-will under Article II, and cannot enjoy even a single layer of for-cause protection.

The Supreme Court has identified a confined exception to the President's removal power for "inferior officers with limited duties and no policymaking or administrative authority." *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2200 (2020). But ALJs' duties are not "limited," either in duration and scope (like the independent counsel's in *Morrison v. Olson*, 487 U.S. 654 (1988)), or power (like the cadet-engineer's in *United States v. Perkins*, 116 U.S. 483 (1886)). Rather, ALJs serve indefinitely, *e.g.*, 5 U.S.C. § 7521, and wield "significant authority," *Lucia v. SEC*, 138 S. Ct. 2044, 2052 (2018). More, DOJ *itself* has admitted ALJs "determine, on a case-by-case basis, the policy of an executive branch agency." Sec'y of Educ. Review of ALJ Decisions, 15 Op. O.L.C. 8, 15 (1991).

ALJs thus flunk both prongs of Article II's narrow exception for certain inferior officers. Article II mandates that ALJs—including DEA ALJs—be removable at-will.

**4.**    As for remedy, the Government barely engages with the arguments offered by Morris & Dickson.  Instead, the Government just insists (Opp.12) this Court should reflexively extend *Collins v. Yellen*, 141 S. Ct. 1761 (2021), to agency adjudications.

But that makes little sense, as Morris & Dickson explained.  In adjudications, improper tenure protections are akin to structural error.  Indeed, when a non-Article III tribunal adjudicates a matter that should have gone to an Article III court, nobody asks whether the adjudicator would have acted differently with tenure protections; harm is presumed, and vacatur required.  *See Stern v. Marshall*, 564 U.S. 462, 502-03 (2011).  So too here.  Much as the *absence* of tenure protections compels vacatur with some adjudications, the *presence* of tenure protections compels the same with others.

*Collins* is also inapposite because ALJs' tenure protections are nonseverable from their authority to act.  *Cf. Collins*, 141 S. Ct. at 1788 & n.23.  Congress only bestowed ALJs with authority *because* of their independence, *Ramspeck v. Fed. Trial Examiners Conf.*, 345 U.S. 128, 130 (1953); their removal restrictions are thus nonseverable from their adjudicatory powers.  The Government responds only that DEA did not *need* to use ALJs.  Opp.13.  But that is a nonsequitur.  The question is not whether DEA was required to use ALJs; the question is whether *any* ALJ has the authority to render *any* decision, and the answer to *that* question is no.  Vacatur is thereby required, because ALJ Dorman (like any ALJ), lacked any power to act.

**B.     The Appointments Challenge Is Likely To Succeed.**

**1.**     The Government agrees ALJ Dorman was appointed in violation of the Appointments Clause.  It also agrees ALJ Dorman made a number of decisions before he was ratified.  Opp.17.  But the Government says none of this matters, because ALJ Dorman did not formally render a "prior decision" before his ratification.  *Id.* 18.

That argument is unavailable and unpersuasive.  For one, none of the Government's ratification analysis is within the Order (88 Fed. Reg. 34523, 34542 (May 30, 2023)), and thus cannot be used to save it.  *SEC v. Chenery Corp.*, 332 U.S. 194 (1947).

Regardless, the Government's "prior decision" distinction has no basis in *Lucia* or logic.  It cannot be that ratification is available until the last moment before a decision is formally rendered—and nothing in *Lucia* suggests that counterintuitive rule.  Rather, *Lucia* says a new hearing is required whenever an ALJ has been exposed to the merits, because the fitting remedy is a new hearing before an adjudicator with an open mind. *See* 138 S. Ct. at 2055 n.5.

**2.**     Unsurprisingly, the Government's main argument is thus not the merits, but forfeiture.  Opp.14-15.  It faults Morris & Dickson for not continuing to press for relief within the agency after its initial objections were ignored, and its Appointments Clause challenge was dismissed in federal court at DEA's insistence.  That is wrong. For starters, the Government—relying on cases predating *Carr v. Saul*, 141 S. Ct. 1352 (2021)—fails to show Morris & Dickson was even obligated to press its challenge

before the agency. Opp.14. In *Carr*, the Supreme Court clarified that forfeiture rules often should not apply to "structural constitutional challenges." 141 S. Ct. at 1360.

In all events, Morris & Dickson cannot be faulted for not exhausting anew its old objections once back at the agency, because DEA had given every indication further objection was futile. Then—as now—DEA maintained ALJ Dorman was perfectly lawful, and *Lucia* did not mandate his recusal. Opp.16. Even now, the Government cannot state Morris & Dickson *would* have gotten a new ALJ. At most, the Government says Morris & Dickson should have kept slogging through the bureaucracy because ALJ Dorman gave a single "indication" that a recusal motion might "likely" be granted. *Id.*

That is not enough. Again, Morris & Dickson raised its objections repeatedly before the ALJ, and even sued DEA over them. A party who does that has not forfeited its claim—nor has it "sandbagged" the agency. That Morris & Dickson eventually felt compelled to acquiesce to the DEA's process—after multiple attempts to change it, and as the fiscal costs of protracted proceedings mounted—does not constitute forfeiture.

**3.** At minimum, any forfeiture should be excused. In *Freytag v. Commissioner*, the Supreme Court excused forfeiture of an Appointments Clause challenge where the petitioner both failed to raise a timely objection, and also "consented to the assignment" of the officer. 501 U.S. 868, 878-79 (1991). This case affects the courts' "strong interest" in "maintaining … [the] separation of powers," and offers an opportunity to clarify the scope of *Lucia*'s remedy. *Id.* And on the equities, it is far easier than *Freytag*, given Morris & Dickson *tried* to vindicate its rights, but was wrongly turned away in a

6

decision repudiated by *Axon Enterprise, Inc. v. FTC*, 143 S. Ct. 890 (2023). Morris & Dickson deserves its day in court—just as DEA promised it would receive (Mot.15).

### C.    The Arbitrary & Capricious Challenge Is Likely To Succeed.

**1.**    The Government agrees, as it must, the Order's "sanction" rests almost entirely on the view Morris & Dickson failed to adequately accept responsibility for its misconduct. Opp.20-21; 88 Fed. Reg. at 34537-40. On this telling, Morris & Dickson cannot be "entrusted with a registration," because its alleged failure to grapple with its past means that it cannot not be trusted "in the future." 88 Fed. Reg. at 34539-40.

That is wrong even focusing just on Morris & Dickson's conduct.[2] And it is indefensible when also considering the DEA's, which belies the Order's rationale. Again, the Administrator waited *four years* to issue the Order. Mot.19. And again, the Administrator's stated preference is for settlement. *Id.* Necessary to both is the premise Morris & Dickson *can* be trusted to operate in the public interest (and *has* done so in recent years). That premise is irreconcilable with the Order's stated rationale.

The DEA cannot rest its decision principally on a rationale at total odds with its conduct. At minimum, a reasoned decision must acknowledge, and try to address, this tension. The Order does not do so. And tellingly, neither does the Government.

---

[2] Even a cursory review of the Order and record reveal Morris & Dickson did adequately accept responsibility. 88 Fed. Reg. at 34538. Here too, the Government does not try to substantively defend the Order's reasoning.

**2.**     Of a piece, the Government makes no effort to meaningfully defend the Order's *ipse dixit* that the Administrator had "considered alternative sanctions."  88 Fed. Reg. at 34541 n.92.  The Government instead just stresses an agency's choice of remedy is owed deference.    Opp.21.    But a remedy must nonetheless be "sufficiently supported."  *Morall v. DEA*, 412 F.3d 165, 181 (D.C. Cir. 2005) (vacating revocation). Especially so where, as here, DEA fails to recognize, let alone explain, "analogous circumstances" where it had imposed lesser sanctions.  *Id.*; *see also* Mot.21.

**3.**     Most telling, the Government barely disputes the charge of pretext.  It does not challenge Morris & Dickson's account of settlement negotiations.  *More, it does not even deny that DEA issued its decision in order to get ahead of an AP story.*  At most, the Government says that the relevant part of the Order says "nothing about the order's timing," and in any event, that "timing" is not a basis for vacating the Order.  Opp.23.

Not so.  The Order *does* peg its timing—and more important, its sanction—to a breakdown in settlement negotiations: "[T]he parties have not reached such a settlement here.    *Accordingly*, and although the Agency has considered alternative sanctions as Respondent has requested, it has decided that revocation *currently* is the most appropriate sanction."  88 Fed. Reg. at 34541 n.92 (emphases added).  But negotiations had *not* broken down; indeed, DEA agreed to continue them an hour before the Order issued.  Walden Decl. ¶¶ 11-12.  There is thus every reason to think the Order's *stated* reason was not its *actual* reason—and the real force behind its issuance and penalty was bad press.

8

That is not an issue about "timing." If the Order's proffered rationale is pretextual, it must be set aside. *Dep't of Comm. v. New York*, 139 S. Ct. 2551, 2576 (2019).

## II. THE EQUITABLE FACTORS FAVOR A STAY.

### A. Morris & Dickson Faces Irreparable Harm Absent a Stay.

There is no doubt Morris & Dickson will suffer irreparable harm without a stay: The company will almost certainly shutter in the coming weeks if the Order is not shelved. Mot.24-25. The Government agrees. Its sole argument is that a stay likely will not stave off Morris & Dickson's demise. Opp.24-25.

That defies both sense and record. When DEA immediately suspended Morris & Dickson in 2018, a number of customers left; but the company stalled further harm by obtaining an injunction. Hatcher Decl. ¶¶ 16-18. After then—contrary to the Government's suggestion that customers and manufacturers prefer "certainty" over all else and will flee any ongoing administrative proceeding (Opp.24)—Morris & Dickson's customers stuck with it for years.

The same would happen here. Morris & Dickson's customers and manufacturers contract six-to-nine months in advance. Casida Decl. ¶ 7. As such, the Order's August 28 effective date—just as DEA's prior ISO—puts an *immediate* choice to those entities. Hatcher Decl. ¶ 14. By contrast, a stay would leave existing registrations in place, allow current contracts to be renewed, and permit the company to develop a plan for the time ahead. It would allow the company to save existing customer relationships—the loss

of a single one of which is irreparable—and keep its otherwise deteriorating goodwill. *See* Hunter Decl. ¶¶ 10-12. Denying a stay, though, would be fatal.

### B.    The Public Interest Favors a Stay.

On the other side of the ledger, the Government offers no reason—none—why the Order it has waited four years to impose must go into effect *now*. Opp.25. The Government notes only the reasons for punishing Morris & Dickson in the first place. But if Morris & Dickson's past conduct merited immediate sanction, DEA would not have waited four years to implement the Order—nor delay its effective date, nor maintain that a settlement (where Morris & Dickson still operates) is the best outcome.

The truth—as DEA's actions betray—is that allowing Morris & Dickson's *revised* operations to remain in effect is strongly in the public interest. The Government does not dispute those operations have been safe, effective, and indispensable over the last four years. Nor does it dispute that a stay denial will cause hundreds of employees to lose their jobs, and produce severe repercussions across the region's healthcare system. Hatcher Decl. ¶ 23. Nor does it dispute that denying a stay will effectively immunize the agency's unlawful edict from judicial review.

In short, the public interest rests with keeping the status quo. Denying a stay harkens only stark and irreversible disruption—all without any offsetting benefits.

## CONCLUSION

This Court should promptly grant a stay.


Dated: June 16, 2023                            Respectfully submitted,

                                                /s/ Jeffrey R. Johnson
                                                Jeffrey R. Johnson
Jim Walden                                         *Counsel of Record*
John Curran                                      Harry S. Graver
Veronica M. Wayner                               JONES DAY
James Meehan                                     51 Louisiana Ave., N.W.
WALDEN MACHT & HARAN LLP                         Washington, D.C. 20001
250 Vesey Street, 27th Floor                     (202) 879-3939
New York, NY 10281                               jeffreyjohnson@jonesday.com
(212) 335-2030
jwalden@wmhlaw.com


*Counsel for Petitioner Morris & Dickson Co., LLC*

## CERTIFICATE OF COMPLIANCE

In accordance with Federal Rule of Appellate Procedure 32(g), I certify that this motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2,600 words, as counted by Microsoft Word, excluding the parts of the motion excluded by Federal Rule of Appellate Procedure 32(f).

This motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using Microsoft Word in Garamond 14-point font.

Dated: June 16, 2023                    */s/* Jeffrey R. Johnson
                                        *Counsel of Record for Petitioner*
                                        *Morris & Dickson Co., LLC*

**CERTIFICATE OF ELECTRONIC SUBMISSION**

I certify that: (1) any required privacy redactions have been made, 5th Cir. R. 25.2.13; (2) the electronic submission of this document is an exact copy of any corresponding paper document, 5th Cir. R. 25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free from viruses.

Dated: June 16, 2023          /s/ Jeffrey R. Johnson
                              *Counsel of Record for Petitioner*
                              *Morris & Dickson Co., LLC*

## CERTIFICATE OF SERVICE

I certify that on June 16, 2023, the foregoing motion was electronically filed with the United States Court of Appeals for the Fifth Circuit using the CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

Dated: June 16, 2023           /s/ Jeffrey R. Johnson
                                        *Counsel of Record for Petitioner*
                                        *Morris & Dickson Co., LLC*